UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                       Case No. 23-CR-109

EDLANDO M. WATSON,

        Defendant.

---

## ORDER DENYING MOTION TO SUPRESS DNA EVIDENCE AS MOOT

---

Defendant Edlando Watson was charged by a grand jury sitting in Milwaukee with possession of firearms by a felon, in violation of 18 U.S.C. § 922(g)(1). The firearms Watson is charged with possessing include a Hi-Point JCP 40 handgun, a Glock 21 .45 caliber handgun, a Colt M4 Carbine rifle, an Anderson Manufacturing AM 16 multi-caliber rifle, and an Aero Precision LLC X15 multi-caliber handgun. Dkt. No. 1. This charge grew out of an investigation that began in Madison, Wisconsin with the suspicion that Watson had fired a gun into a car occupied by an adult male driver, three young children, and the children's mother. As a result of that investigation, Watson is currently charged with five counts of recklessly endangering safety by use of a dangerous weapon, along with one count of bail jumping, in the Circuit Court for Dane County. The firearms he is charged with possessing in this case were found in a storage unit located in this district. The case is currently before the court on Watson's motion to suppress DNA evidence taken from him by Detective Joseph Buccellatto of the Madison Police Department that apparently links him to two of the firearms found in the storage unit. Dkt. No. 16 at 3–5. Watson contends that the search warrants for his hotel room and business under the authority of which the

buccal swab for his DNA was purportedly obtained are unconstitutionally overbroad and vague. Dkt. No. 16 at 7–13.

In response to Watson's motion to suppress, the government asserted its belief that the warrants were not overbroad and that, alternatively, even if the court concluded they were overbroad, it could prevail under the good faith exception or the inevitable discovery doctrine. Notwithstanding its belief that it would prevail on Watson's motion, the government elected not to oppose it. "[I]n an abundance of caution, in the interest of judicial economy, and to address the defendant's concerns that 'there's just nothing there in either warrant to support getting a buccal swab from Watson,'" the government explained, it elected not to offer those arguments in opposition to Watson's motion. Instead, the government indicated that it would simply obtain a new warrant specifically authorizing it to obtain from Watson a buccal swab for DNA testing based on evidence untainted by any allegedly unlawful law enforcement action. Dkt. No. 22 at 1–2. In other words, the government has agreed that it will not offer any of the items seized under the authority of the challenged warrants, including the buccal swab containing Watson's DNA and the analysis thereof, at trial.

In light of the government's response, the court suggested during a telephone conference that Watson's motion was moot. Dkt. No. 23. But Watson disagreed and filed a reply. Dkt. No. 24. In his reply, Watson argues that the government has waived any argument that the warrants are valid and contends that neither the good faith exception nor the inevitable discovery doctrine applies. As a result, Watson contends that the court should find that the warrants are invalid and that the good faith exception does not apply, and order all evidence seized under the authority of the warrants suppressed. *Id.* at 1–13.

If all Watson was seeking was the suppression of the evidence seized under the challenged warrants, his unwillingness to accept the government's concession and his insistence on having

2

the court decide his motion would make no sense. Because the government has agreed that it will not use any of this evidence at trial, there is no reason for the court to make any findings as to the validity of the warrants. The general rule is that when the government agrees that it will not seek to use challenged evidence at trial, a motion seeking suppression of such evidence should be denied as moot. *See United States v. Hecke*, No. 1:20-CR-7-HAB, 2021 WL 3486593, at *2 (N.D. Ind. Aug. 9, 2021) (denying motions to suppress as moot given the government's agreement to not use the evidence at trial and collecting cases).

But Watson is seeking more than the suppression of evidence already obtained by the government. He contends that the order granting his motion to suppress "should also prevent the government from seeking any new DNA warrant to search Watson's person, as any new warrant would be product of the initial illegal search." Dkt. No. 24 at 1. In other words, Watson claims that not only is the government barred from using the DNA obtained from the buccal swab that he claims was illegally seized, but law enforcement should also be barred from obtaining any new sample of his DNA from him in the future, even if it can lawfully do so under a warrant untainted by any illegally obtained evidence.

In support of this argument, Watson cites a decision by the United States District Court for the Eastern District of Pennsylvania, *United States v. Smith*, 575 F. Supp. 3d 542 (E.D. Pa. 2021). In *Smith*, the defendant was pulled over at night in a high crime area because the car he was driving had excessive window tint. *Id.* at 546. He was placed in custody after a police officer noticed an extended magazine for a firearm on the car's floorboard and later discovered a Polymer 80, Model PF940V2 ghost-gun loaded with 19 rounds of 9-millimeter ammunition. *Id.* at 547. DNA evidence taken from the defendant, allegedly with his consent on the night of his arrest, linked the defendant to the gun, and he was charged with felon in possession of ammunition in violation of

3

18 U.S.C. § 922(g)(1). Claiming his consent was involuntary, the defendant moved to suppress the DNA evidence.

Prior to the hearing on the motion, a government agent obtained a search warrant from a magistrate judge to collect the defendant's DNA. *Id.* at 548–49. The government then argued at the hearing on the defendant's motion that "even if the [original] DNA sample was unlawfully obtained, the evidence should not be excluded because the 'inevitable discovery' and 'independent source' exceptions to the exclusionary rule apply." *Id.* at 553. The district court rejected all of the government's arguments. It found that the government failed to show that the defendant's consent to a buccal swab was voluntary. *Id.* at 555. It then concluded that neither the inevitable discovery nor the independent source exceptions to the exclusionary rule applied.

Of course, as noted above, the government has not argued that the inevitable discovery doctrine, or any other exception for that matter, applies here. The government has simply agreed that it would not offer the evidence, including the DNA evidence obtained under the warrants, at trial, thereby removing any need the court has to address those issues. Watson nevertheless argues that the decision in *Smith* is "highly persuasive" and supports his request that the government be precluded from obtaining his DNA under a new warrant. He contends that the *Smith* court's analysis of the inevitable discovery and the independent source exceptions to the exclusionary rule support his request for the additional relief he seeks.

In rejecting the government's argument that the defendant's DNA would be inevitably discovered utilizing the search warrant it had lawfully obtained, the *Smith* court found that "[t]his belated warrant is nothing more than a post-hoc rationalization to excuse the failure to obtain a search warrant where the police had probable cause but simply did not attempt to obtain a warrant at the relevant time." *Id.* at 556–57 (internal quotation marks and citation omitted). The court continued:

4

> Applying the inevitable discovery [exception] here would render the exclusionary rule and the protections afforded by the Fourth Amendment a nullity whenever the evidence at issue is permanent and unchanging, as in the case of DNA or some other type of bodily sample. That simply cannot be the case. Evidence obtained from a person's body cannot hold a lower protected status than other types of physical evidence simply because of its permanence.

*Id.* at 557.

The *Smith* court also rejected the government's argument that the defendant's motion should be denied under the independent source doctrine. That exception did not apply, the court held, because "[t]he decisions to bring the case and to secure a warrant authorizing the DNA search over a year after Defendant's initial arrest were 'prompted' by the evidence acquired during the initial unlawful search." *Id.* "A decision to the contrary," the court concluded, "would eviscerate the warrant clause of the Fourth Amendment and thwart the purpose underlying the exclusionary rule." *Id.*

Watson argues that the court's reasoning in *Smith* supports his contention that not only should the DNA evidence that the government currently has be suppressed, but that law enforcement should also be precluded from now lawfully obtaining a new sample of his DNA to use as evidence in this case. He contends that the government's suggestion that it could avoid the problem of defending the original warrants by obtaining a new warrant for his DNA "ignores the problem of the initial warrants, ignores that a new warrant would be prompted by the initial improper warrants, and effectively nullifies the Fourth Amendment." Dkt. No. 24 at 12. He continues:

> If the government's plan holds, it would remove the need to ever get a warrant for DNA in the first place. Law enforcement could simply take DNA however they wanted, and if somebody complains, get a warrant later. Under that scheme, DNA evidence—evidence from the body of a person—could never be excluded. The right to be secure in one's person would disappear. The Fourth Amendment would be swallowed up by what is supposed to be an exception, and the exception will have

5

> become the rule. That cannot be. The Fourth Amendment is too important for do-overs.

*Id.*

Watson's argument is unpersuasive. The purpose of the exclusionary rule is to deter police misconduct by prohibiting the prosecution from using at trial evidence that police unlawfully obtained. *See Nix v. Williams*, 467 U.S. 431, 442–43 (1984) ("The core rationale consistently advanced by this Court for extending the exclusionary rule to evidence that is the fruit of unlawful police conduct has been that this admittedly drastic and socially costly course is needed to deter police from violations of constitutional and statutory protections."). "On this rationale," the Court explained in *Nix*, "the prosecution is not to be put in a better position than it would have been in if no illegality had transpired." *Id.* at 443. But neither is the prosecution to be "put in a worse position simply because of some earlier police error or misconduct." *Id.*

The independent source doctrine, along with the closely related inevitable discovery doctrine, are both intended to further the latter goal—to ensure that the prosecution is not put in a worse condition. Thus, under the independent source doctrine, "[w]hen the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation." *Id.* Under those circumstances, the evidence need not be excluded. *Id.* ("The independent source doctrine allows admission of evidence that has been discovered by means wholly independent of any constitutional violation."). Likewise, under the inevitable discovery doctrine, "[i]f the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . then the deterrence rationale has so little basis that the evidence should be received. Anything less would reject logic, experience, and common sense." *Id.* at 444.

Neither doctrine supports Watson's contention that the government should be barred from using lawful means to obtain his DNA on the facts of this case.  The fact that DNA evidence is permanent and unchanging is irrelevant.  So, too, is the fact that the government's decision to obtain a new sample of Watson's DNA is prompted by Watson's motion to suppress.  The only relevant questions are whether the materiality of the evidence was obvious, wholly aside from the unlawful police misconduct, and whether the government can lawfully obtain it.  A criminal trial is not a game with arbitrary rules to determine winners and losers.  It is a search for the truth governed by rules that are intended as much as possible to achieve that result, while at the same time minimizing the risk of convicting the innocent.  If, as the government suggests, it will be able to lawfully obtain a new sample of Watson's DNA without relying upon evidence that is tainted by or derived from any illegal police conduct, there is nothing to prevent it from doing so.  Indeed, it would "reject logic, experience and common sense" to deprive a jury or other factfinder of key evidence, lawfully obtained and not derived from any police misconduct, concerning the question of whether Watson's DNA was found on the firearms he is charged with possessing.

Contrary to Watson's argument that the consequences of ruling against him would be devastating to individual privacy interests, it is not true that denying Watson the additional relief he seeks would eliminate the need to ever get a warrant for DNA, cause the right to be secure in one's person to disappear, or allow the Fourth Amendment to be swallowed up by an exception.  A law enforcement officer who intentionally violates an individual's Fourth Amendment rights by "simply tak[ing] his DNA however he wants" is subject to personal liability for damages under 42 U.S.C. § 1983.  *See Hudson v. Michigan*, 547 U.S. 586, 597–98 (2006) (noting "[c]itizens and lawyers are much more willing to seek relief in the courts for police misconduct" and "[t]he number of public-interest law firms and lawyers who specialize in civil-rights grievances has greatly expanded" since "Congress has authorized attorney's fees for civil-rights plaintiffs").

7

Moreover, if the only evidence the officer offers in an application for a warrant is derived from illegal police conduct, no valid warrant could issue. Thus, an officer who acted in such a manner could not, "if somebody complains, [simply] get a warrant later." Dkt. No. 24 at 12.

This entire analysis assumes, of course, that a warrant was needed to obtain Watson's DNA in the first place. In *Maryland v. King*, the Court held that a warrant is not constitutionally required to take a buccal swab as part of the booking process upon a lawful felony arrest. 569 U.S. 435, 465–66 (2013). As the Court explained in *King*, "[b]uccal cell collection involves wiping a small piece of filter paper or a cotton swab similar to a Q-tip against the inside cheek of an individual's mouth to collect some skin cells. The procedure is quick and painless and it poses no threat to the health or safety of arrestees." *Id.* at 444 (cleaned up). In the context of a valid arrest supported by probable cause, an arrestee's expectation of privacy is not offended "by the minor intrusion of a brief swab of his cheeks." *Id.* at 465. Accordingly, "[w]hen officers make an arrest supported by probable cause to hold for a serious offense and they bring the suspect to the station to be detained in custody, taking and analyzing a cheek swab of the arrestee's DNA is, like fingerprinting and photographing, a legitimate police booking procedure that is reasonable under the Fourth Amendment." *Id.* at 464–65; *see also United States v. Schreiber*, 866 F.3d 776, 778 (7th Cir. 2017) (affirming denial of motion to suppress DNA evidence obtained from buccal swab after an arrest supported by probable cause). In light of this authority, it is not clear that a warrant was even needed to obtain Watson's DNA with a buccal swab.

That issue, however, is not before the court at this time. In the event the government obtains a new sample of his DNA and indicates an intent to use it at trial, Watson may file a new motion to suppress if he believes the evidence was illegally obtained. For now, however, the government has agreed that it will not seek to use at trial any evidence, including the DNA obtained

8

from Watson, under the authority of the challenged warrants. Given this concession, Watson's motion to suppress (Dkt. No. 16) is **DENIED** as moot. He is entitled to no further relief.

**SO ORDERED** at Green Bay, Wisconsin this 16th day of October, 2023.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge